Alright, the first case is Kanfer v. Busey Trust. For the appellant, Mr. Stewart, and for the appellee, Mr. Wagner and Ms. Ackman. And Ms. Ackman, you're going to argue. Alright, you may proceed, Mr. Stewart. If it please the court. Fraud is generally defined in law as the intentional misrepresentation of material existing fact made by one person to another with knowledge of its falsity and for the purpose of inducing the other person to act and upon which the other person relies with resulting injury or damage. Constructive fraud, however, is acknowledged under the law although deceptive intent is missing because it has the same consequences as actual fraud would have. In the Kanfer case, Main Street Bank was approached by Larry Kanfer to become guardian of the estate for his mother, Ruby Kanfer, as he sought to apply for the guardianship over her person. They lined out specifically in writing actions they would take, such as investment analysis and other actions. And based on these representations, Larry nominated Main Street as guardian. Counsel, can I stop you there? You opened with your definition of fraud and constructive fraud and I appreciate you getting right to that point. My question is, given that we had accountings done in this case and everything was laid out for everyone who was involved, how does this involve fraud, constructive or otherwise? There are at least three very specific outright fraud elements or actions by Main Street. Number one, in one accounting and one appearance in the courtroom they presented and an agreement was reached by the parties, quote unquote, the parties, that there would be no inspection of a Florida condominium. That was based on the representation by Main Street that it was too expensive to send two officers down to Florida to examine the condominium. At that point in time, in their possession was an extensive property damage report from their agent. That property damage report was never presented to the court, to the parties, until after the ward died. That property damage report outlined in at least three pages very specific, significant damages. So there was an intentional failure to disclose that property damage report and present to the parties, well it's just too darn expensive to fly two officers down to visit a Florida condo. That's one element. Was there ever a request for that report by any party? No one knew that it existed. It was held in the files of the bank and never disclosed to the parties until after the petition for surcharge was filed and it was found in discovery. Second item was that there was no investment analysis. They didn't even go into the safety deposit box and examine and itemize all the stock certificates. And it was later disclosed in discovery that the reason for this was not because of the multitude of stocks, and there were. This was a significant estate held by the ward and then the decedent, but the bank was going through a merger and their trust departments were merging their systems.  during the entire two-and-a-half-year period of the guardianship, the bank's personal corporate interest in the merger. Did the bank ever represent that it had undertaken those things? At the outset, the agreement that was lined out to Larry Kanfer when he agreed to nominate the bank outlined that they would do an investment analysis. As a commercial bank, they reach out to individuals as well as court appointments as guardians. They perform investment analysis and strategy for all of their clients. And here you have that same bank appointed as guardian, a fiduciary, and they don't even do what they do for their own private customers. So, no, it was not presented to the court until the final report which said, we're getting ready to do this. The third element was that they did have, during 2006, I believe, an outline of assets and the basis, and you had the ward invested in somewhat was a day trader. There were 340 different types of stock. There were a number with zero value or close to zero value that had declined significantly, huge capital losses. The bank filed an income tax return and generated $50,000 of income taxes and they acknowledged they did this, all with capital gains, and all they had to do was harvest the losses to offset those gains and they would have avoided the $50,000 in taxes. Those are three major items that are direct. The rest as to constructive fraud are the failures on the part, in a timely manner, to manage the investment accounts. There was a $2 million account that the only transfer was between non-taxable and taxable investment. In other words, whether it would be subject to federal income tax or not. That was the only change they made in that. They made no switches in this stock portfolio. As to the supervision of the condominiums, they didn't go out and hire a professional property manager. They hired an individual who even wrote them, the same person who wrote the property report and said, I am not a professional property manager. She worked in a law office which had handled the ancestate where the ward received the condominium from. So she was somewhat familiar with the property, but she was not a professional and advised them of that. They had been directed in their order, which their attorney prepared for the court when they were appointed permanent plenary guardian of the estate, to secure, to prepare and secure inventory and appraisal of the personal property in the condominiums. They inventoried, but they never did an appraisal. So we're caught in the bind right now that how do we prove economic loss? There was significant water damage to the Florida condominium by virtue of a hurricane. There was mold and mildew. The personal items within that condominium are significantly damaged, but how do we prove the value from day one when they took over? There are no appraisals. The bank failed in their responsibilities. When the ward herself, who fought the guardianship, sought to examine the possibilities of sale of the Florida condominium, they denied access to the agent. They denied or refused and did not follow up on prospective buyers to the Florida condominium at a point in time in 2006 and 2007 when the Florida market was rapidly declining. Those are all items. When you look at the accounts, yes, there are 300 and 400 pages, but there's a summary of two pages on one and three pages on another. They are an itemization of receipts and disbursements. They are a listing of assets. Nowhere within those accounts is an outline of here's the property, the condominium in Champaign, Illinois, and the condominium in Florida, and here's what we propose to do in regard to maintenance and or repair and or lease or sale. There is no itemization. There is no mention other than perhaps one sentence in one of those accounts. There is no outline of when you have millions of dollars in the stock market, an outline of investment philosophy, strategy, and approach. I think I pointed in the briefs to a couple of cases, and I realize there are two cases coming out of this district. One is Luer's and one is Aschauer, which if you read and you are liberal in the interpretation, you say, okay, once you have that order, then you can't go back. But let's look at the facts in those two cases. In Luer's, you had parties who were litigating notes in federal court and state court at the time the account was filed. Everyone knew the issues, and to go back after the account is approved and challenged by virtue of saying, well, there were misrepresentations or lying to the court or on the stand, perjury on the stand, and that constituted fraud, I think the court was correct. The parties knew what was at issue.  And in Aschauer, what you had was you had four accounts were approved right off the very beginning, and then you had three or four following. It involved what we call 2032A, special use valuation of farmland. The opposer or the objector in that case signed a consent within nine months of date of death allowing or consenting to 2032A. Then she comes, she or he comes back at a later point after the accounts for those four years had been approved and says, well, IRS denied 2032A. You should have known better, and therefore I want to challenge. Well, the issue was there. The issue was present in regard to the qualification of 2032A at the time the accounts were presented and approved. What we're saying is we had no way of knowing about the income tax liability, about the stock portfolio, and what would be created at the time the account was filed. No mention was made of it. It was mere recitation of receipts and disbursements. Well, counsel, if we accept your argument, then what is the purpose of these accountings other than the final accounting? Are we just engaging in an exercise in futility, just taking up time of the court and the parties? I don't believe so, Your Honor, and I believe that they would be perhaps prima facie until there was an opportunity for the objector to come forward and rebut and set forth why there was constructive fraud on the court. In this case, in the Canfor case, there is no outline of any property damage. There is no outline of what is to be done in regard to the property. The real estate condos were not even addressed really in that, other than perhaps they were listed one condominium in the state of Florida. That doesn't give notice to the court as to any element of the problem, so that they could not take discovery on that. They were not apprised that there was any damage whatsoever. Was the check to the IRS for $50,000 reflected in the disbursements in the accounting? Okay. The check for the IRS comes after the account. In 2006, accounting was filed and approved. The check comes the following year in April, and that has not been approved. So it does not appear. But if you were to take that stance that everything that could have been raised must be raised as of December 31st or the date of the accounting, you can argue that the harvesting of the losses is covered at the same time the approval of the accounting is, even though the tip, the way to detect that, is the $50,000 check to IRS, which came later. But the underlying transactions had to be made in calendar year 2006. But is this guardianship estate closed out? No, it is not. So there hasn't been a final report yet? There has been a final report. That has never been presented to the court, and it has never been approved. So have you filed objections to the final report? Yes. And did you raise this $50,000 check? We raised in the petition for surcharge the final report covers those final year, the final year or period until all funds were transferred over. So it is before the court again? Yes. My question is, how familiar were, I presume, Lawrence and Ruth are children of the ward? They are the only two children of the ward. And how much knowledge did they have of the nature and extent of their mother's estate? I think they knew the size of the estate. But not the details? Roughly. But not the details. Because it seems to me that if they put their trust in Main Street Bank, now the successor of UC Bank, and they have some idea of what their mother's estate is, they are capable of looking at it and saying, well, wait a minute. If the hurricane hit the condo in Florida, what are we doing about it? Did they just stand there with their hands folded and mouths shut? They were not aware of the damage to the condo. They had not been at the condo. They had not seen the damage. So they had no idea that the condo had incurred any damage whatsoever. I'm not talking about extent, but they didn't know that the condo had been hit by a hurricane. I believe they had knowledge that there were some elements of damage, not as to the significance of that. And that I am just making the assumption. And you have in this case also the guardian ad litem saying in a deposition, I figured that Main Street was doing their job. And as long as the needs of the ward were satisfied, I was not going to dig in and examine the 300 and 400 pages. And his time records reflect that. He was involved in the litigation. This whole thing seems to revolve around the fact that there was an argument as to who should be the proper guardian of the person. And then when Mom got involved in the litigation and her rights were affected, she lashed out at both the kids. She revoked her will, and she sought to bring back the gifts that she had made. And then the kids, after they started seeing what had transpired, looked at Father's estate, and they were on notice that they were no longer in Mom's estate. They looked at, well, Dad had a trust for us. Where is that trust? And they found that Mom had never funded it. So those three issues preoccupied the time of the court. And oh yes, there was Main Street over there, but they're a good-sized bank. They're competent. We're going to assume that they're doing their job. And they come in and present 300 and 400 pages. And boom, it's approved. No examination by the guardian ad litem. And I would stress that the two children were not under an obligation to review that account. They were in court as guardians or fighting over the guardians of the person. What's best for Mom? What's her health care and so on? That's what they were focused on, not the accounting. I wanted to ask you, because I'm curious, in the final event, are the children left out of her estate plan? The children, okay, the final document, there's an endowment for a professorship. The father was a professor over at the University of Illinois. So a significant chunk goes to the University of Illinois to endow a professor. The balance goes to a couple. Well, there are a couple other minor charities, I believe, in there too. But the balance goes into a trust. Income for life to the two children in two separate trusts. Remainder down to grandchildren. So, yes, the children do receive under Mother's will. She rewrote that. But they were there in their capacity as guardians of the person. Thank you. And you'll have additional time on rebuttal. May it please the court, counsel. I would respectfully disagree with the petitioner's view of the law, as well as the issues in this case for some basic and fundamental reasons. First of all, the applicable law is that it's found in the current Illinois Supreme Court rules in the probate code, and not the law as it existed in the early 1900s, which is the law that the plaintiff's counsel relies on. The issues are those that are defined by the trial court's order dismissing certain portions of the petition for surcharge pursuant to sections 2619 and section 2615. And we believe that when the court applies the law to the matters at issue, the trial court's decision should be affirmed. I think that court has a good grasp on the parties that were at issue in the guardianship. There was a guardianship set up for Ruby Camper. She was an elderly widow with two adult children. She had significant assets, which were of different types and held in different places. She enjoyed day trading, and she was relatively successful, and she fought the guardianship tooth and nail throughout the proceeding. When Ruby had health issues, her son Larry petitioned for a guardianship. Ruby fought the guardianship. She had her own lawyer that represented her throughout the guardianship proceedings. In fact, she not only had one, she had multiple lawyers throughout the guardianship proceeding. And she filed many motions with respect to how her monies were being used, what she wanted to happen, and that she wanted the guardianship to go away. Ruth Camper was Ruby's daughter. She also had her own lawyer, and they filed multiple motions dealing more than just issues over who should be the guardianship of the person. Ruby also filed motions with respect to matters about monies that were given to Larry and what should happen to those. And she also asked to see Larry Camper's bank records. So they were all interested in more than just a guardian of the person. Larry Camper also was present and received notice of hearings through his attorney throughout the guardianship proceeding, and he also participated vigorously in that matter. Counsel? Yes. Irrespective of whether or not we view that you're correct on the law or opposing counsel's correct on the law, there's an exception for fraud, correct? Correct. But you also differ on your interpretation of what the nature of that fraud has to be. Can you talk to us a little bit about that? Absolutely. Counsel for petitioners suggests that there can be fraud within the proceeding, and that is enough to overturn the orders that were made that approved both the accountings, approved petitions for fees and expenses, and approved an order that the guardian did not have to inspect the Florida property. Petitioners' counsel argues that annual counts are current accounts and that the rulings can be modified at any time. And I believe that that argument is based on decisions that were issued in the early 1900s. One decision was the Marshall decision. It was issued when the probate code was different. There was no provision for approval and the binding nature of approval of interim accounts. The law has changed since Marshall was issued. The Mueller case that plaintiff relies on, or that petitioners' counsel relies on, it was an abstract opinion, which, as the court knows, cannot be relied on by the court, and it interpreted rule 304, Illinois Supreme Court rule 304, I believe, before the amendment was made in 1970 to add 304B1. These are historic decisions based on the law prior to 1939. And in the case of Ashlar, which was a Fourth District Court of Appeals decision, this court looked through the history of the Probate Act, and it said that prior to 1939, the law did not provide for approval of interim accounts. But since that point in time, the law had changed, and it provided for binding rulings where there's notice given to the parties. And the court said, quote, the clear language of the statute requires us to overturn earlier authority and to hold the approval of account by the court's binding on all parties who had notice in res judicata for that period. Now, I admit that the Ashlar decision interpreted Section 24-2 of the Probate Act, and we're dealing with accounts in the guardianship. But the same differences in language and the same progression throughout the history occurred with respect to approval of accounts in guardianships. Prior to 1939, and I've identified the history of Probate Act as to guardianship accounts in my brief, but prior to 1939, the code just provided for annual accountings. But in 1939, the language was changed to its current state, which provided that if, one, notice of hearing is given at least 10 days before hearing, and two, a court appoints the guardian ad litem to represent the ward at the hearing, in the absence of fraud, accident, or mistake, the account is approved as binding on the ward. No one argues that those conditions were not met in terms of notice of hearing and a guardian ad litem being appointed. And in fact, in addition to having a guardian ad litem, there was an attorney for Ruby present, there was an attorney for Ruth, and an attorney for Larry. Now, to your second point about what's the difference in the fraud that we're arguing about. Petitioner's counsel argues there can be fraud within the proceeding, and that's enough. But in this court's decision in the enlarged state, the court again went through what happens generally in civil actions and how does that apply to probate actions when we're dealing with equity. And it noted that in order to overturn a final order, there has to be an allegation of fraud in the jurisdiction. And what that means is that the court has general jurisdiction to hear the matter, and it has jurisdiction over the parties. And what the court said is, this applies in probate proceedings. And the fact that it applies is demonstrated or illustrated because in the probate code in Section 24.2, and with respect to ward's accounts in 24.11b, the legislators added the phrase, fraud, accident, or mistake. And the court in Lurz said the legislators intended to apply the law that had developed up to that point in time in probate matters. So for that reason, I think that clear language of Section 24.11b, in addition to the way the courts have interpreted that, means that you have to demonstrate fraud in the jurisdiction. What does that mean, fraud in the jurisdiction of the court? What that means, I think it goes back to when courts look at, is the final order void or is it voidable? And in order for there to be a collateral attack on a judgment, such as this case, the plaintiff or the person who's trying to overturn that has to show that there's fraud in the jurisdiction. Give me an example. I'll give you an example. There's a case where representations are made that notice of hearing was given to a party when, in fact, that didn't occur. So the person wasn't able to get to the hearing, wasn't represented at the hearing, order was reached. That would be an example of fraud in the jurisdiction because a representation was made that public notice was given to an interested party. But, in fact, it wasn't given. So there was never jurisdiction over the person. That person never had an opportunity to present themselves at the hearing. That's what I think the courts identify as fraud in the jurisdiction. The court has colorful jurisdiction. But what the courts say, fraud in the jurisdiction is not. Allegations such as that is made here, such as concealment in the proceeding, fraud in the proceeding, that's not enough to be fraud in the jurisdiction, fraud in the court's jurisdiction. Opposing counsel makes a good point in that he alleges information was withheld to the point that the parties didn't even know that they should object or know that there was something that they should be looking into. How is it fair, so to speak, to hold them to the standard that, well, you approved this accounting so you can't go back, even though the bank had the control of the information and simply did not provide it? I'd like to make a couple points with respect to that. I think it's, first of all, important to note what's at issue in this case. The court dismissed under Section 2, 619, Paragraphs 3E, 3F, 4CI through 437 and 6. What is not at issue is Paragraph 5, and that's a number of the allegations of what they're referring to with respect to the management of the condominium. He also makes arguments about the failure to harvest capital losses. That paragraph also was not stricken. So, to me, that issue is not on appeal. Another thing that I'd like to speak to Plaintiff's counsel, Petitioner's counsel, says that they never knew the extent of the damage to the Florida condominium. On January 5, 2006, respondent filed a motion for permission to take certain actions, and that's in the record at C758. Exhibit 1 is a letter from Kathleen Moore regarding actions for which the orders were requested. And in that filing, there was an estimate from ServiceMaster to take care of mold in the Florida condo. So there was information that was presented at the very least to the attorneys for Ruby, Larry, and Ruth. With respect to the other matters in terms of investment, each of the countings that were presented to the court and which were approved and agreed to by the petitioners in this case identified what was going on with the investments. Not only did it include a listing of all the assets and all the attachments, it included a narrative. And in the first narrative, submitted on May 3, 2006, it said the accounts have not yet been consolidated into the wealth management account. Quote, the consolidation has been done in a measured manner and has only been partially completed in order to provide Ms. Camper with sufficient time to become accustomed to the guardianship. The petition goes on to say that the bank is aware that Ruby is interested in petitioning for the termination of the guardianship and it did not want to complete the consolidation of assets prior to the petition for the termination being heard. They also have not consolidated all the trading accounts. They were trying to work with Ruby. She was resistant to ideas. They have not proceeded because the petition for termination of guardianship was filed. So there's an explanation as to what's going on. On January 29, 2007, with the second current report in accounting, the narrative again says during 2006, the majority of accounts were transferred. A considerable time in 2006 was spent working with counsel for Fred Camper Estate in verifying accounts. Busey continues to evaluate holdings and because the accounts held over 340 equity positions, it was a time-consuming process and it was determined Busey would not start the process until the consolidation was completed. And that's because there was a difference in how the guardianship was going to be charged. It would be more expensive, $100 an hour, to do that before the consolidation occurred, whereas after the consolidation occurred it would be a percentage fee, which was much less. So to say that there was no communication as to what was going on in the guardianship, I think is different than what actually occurred because the narratives did explain what was being done. Can I confirm one thing with you? I think you said the IRS issue was not stricken by the court and that's still pending. I believe that's true. And then did you also say the issue about the condo damage was not stricken? What was stricken was the agreement not to inspect the Florida condo at the time of 10-2705. The other allegations with respect to the condo are in paragraph 5, which were not dismissed and stricken. I think the other point I'd like to make is that Petitioner's Counsel refers to or suggests that there was some fraud based on representations made by Busey coming into the guardianship. And I also respectfully disagree with that point as well for a number of reasons. First of all, the argument that there was fraud coming into the guardianship was made for the first time on appeal in a reply brief based on Exhibit G to the Second Amendment Petition. Nowhere below was that argument made. And in fact, the only reference to Exhibit G in the petition for surcharge was with respect to the real estate and not the manner of the investments. So I think the argument has been weighed, both because it's not been argued and both because it's not in the Second Amendment Petition. But even if the argument is considered, I think it's also without merit. Exhibit G, which petitioners rely on, was not completed until after Busey was before the court. This fact is evidenced by paragraph 10 of that exhibit, which reflects that Busey had already been serving as a guardian in the estate proceeding. Nothing, moreover, in Exhibit G suggests or infers fraud in the court's jurisdiction. Petitioners are essentially arguing that Busey represented the future actions it would take in the guardianship proceeding. To the extent that those actions were taken, that at best presents mismanagement, but not fraud. Moreover, nothing in Exhibit G suggests or infers fraud during the course of the proceeding. There was an order for guardianship entered on October 27, 2005, and in that order it said the bank is authorized to consolidate assets pursuant to terms of Exhibit 6. And Exhibit 6, I believe, is Exhibit G, although I think that's what petitioners are arguing. And in Exhibit 6, that document says an evaluation will be made by Main Street Wealth as to the best practice to get to agreed asset allocation. Financial soundness, tax considerations, and appropriateness will dictate whether investments in place will be kept. The order also said it should be in the guardian of the state's sole discretion to exercise the power of guardian of state as set forth in probate in this court. Nothing in Exhibit 6 or Exhibit G identified when all the assets would be consolidated or what actions would be taken with respect to the consolidation. So I think for purposes of fraud in the jurisdiction, the issue is not Busey's alleged agreement in connection with the guardianship. It is instead whether the court had jurisdiction over the issues, and clearly it did. It had jurisdiction to enter orders approving the accounts and approving the petition for fees and the petitions for expenses. And it also had jurisdiction over the parties. That's evidenced by the fact that they were all there, either personally or represented by counsel. Going to the point that petitioners make about the GAL, they argue the GAL didn't spend enough time reviewing accounts. But the binding nature of an account, or the court's order on that account, does not depend on the time spent by the GAL looking at the accounts. And more to the petitioner's argument, they argue he didn't bill enough. Well, there's no exception under Section 2411B if the GAL makes no objections, spends limited time, or doesn't understand his obligations. Section 2411B provides, if a GAL is appointed and receives notice of a hearing, it's binding on the ward. Moreover, and particularly in this case, they're bound because they were present at the hearings, they agreed to the accounts. In terms of public policy, the kind decision that I've cited in the brief is in our favor of holding these orders as binding on the board. Otherwise, there would be no finality, there would be no certainty. To Justice Pope's point, what would be the point of accounting if there, or excuse me, my glasses are not working. Justice White's point, there would be no finality, no certainty. What would be the point of having orders in accounting if they weren't binding? So for all these reasons, and with respect to Section 2615, the court entered orders striking dismissing certain portions of the paragraph or the petition under Section 2615. Petitioner's counsel doesn't even address that. So for all the reasons that I've stated here and in the briefs, I would ask that the court's order be affirmed in dismissing pursuant to Section 2619, Paragraphs 3E, 3F, 4CI, 34C7, and Paragraph 6, and pursuant to Section 2615, the paragraphs that were dismissed by the trial court. Thank you. Your time has expired. Stuart Rebuttal. The Lures case does have some important language in it. On the other hand, cases arise in which a party is prevented by fraud of his opponent from presenting the merits of the case to the court. Without receiving information as to a specific issue, we are required to raise all issues. And I raised the question with the court, does that mean that at every guardian ad litem, must at that point in time an accounting is filed, he or she is going to have to litigate every possible issue, every potential issue. He's going to have to go back behind the accounting and determine the income tax liability. As to the service master, one of the issues is, yes, they did deliver antique rugs, Oriental rugs, to service master. What they neglect to find is that when my clients were appointed co-executors, half of those rugs were never returned and service master went out of business down in Florida. The issue wasn't raised. How can we address that issue and dig in and is the guardian ad litem going to be obligated to dig in and research every single issue? The accounting was 300 to 400 pages. The Berger case that I cited looked at the terms of constructive fraud and looked at what the guardian ad litem had done and found the guardian ad litem didn't spend any time really looking at the accountings. He figured that, okay, the needs are being met. I don't need to look at the accountings. Well, in a several million dollar estate where the individual had been day trading, the guardian ad litem or the guardian of the estate has to step forward and develop a strong effective policy. What about Ms. Hackman's last point that fraud was not raised at all? It was from the standpoint whether you mentioned, okay, it was not specifically in bold type, but all the allegations were there as to what the bank had not done and the resulting injury. What she, I think, is saying is that might have amounted to mismanagement that you were arguing before the court, but you never made the argument that this amounted to fraud.  I cannot recall specifically whether the word fraud was mentioned. The words of constructive fraud or the theories of constructive fraud are different from straight on fraud. But the allegations of purposely failing to disclose the property damage report and purposely failing to perform the investment analysis, purposely failing to harvest the capital gains when they were on notice of it by their own attorney, giving them notice that you must watch these and be careful because down the road litigation may develop. They were on notice, but they didn't disclose it. And those were outlined in the pleadings down in the trial court. Thank you. Thank you. We'll take this matter under advisement and stand in recess until the readiness of the next matter.